### BROWN v. CAVE.

1. In action for dower, the grantor of the land with warranty is not incompetent as a witness against the demandant to testify to communications between himself and his grantee, the deceased husband, as to the actual ownership of the purchased land.

2. *Quere:* Is an action for dower, prosecuted by a widow, within the *proviso* to section 400 of the code?

3. Findings of fact by the Circuit Judge from written testimony taken and reported by the master, approved.

4. The facts necessary to raise a resulting trust may be proved by parol; and the payment of the purchase money by five persons, under an agreement that one should take the title for the benefit of all, raises a resulting trust in their favor.

5. Such payments must be made at the time of the purchase; they are so made, if the payments were complete before conveyance executed, although after the agreement to purchase.

6. The possession and use by the parties of their respective shares, and the payment of their several portions of the purchase money, with the

acquiescence of the grantee of the legal title, brings the case within the doctrine of part performance.

7. The husband held the legal title, but the equitable right to four-fifths of the land attached in favor of others before his marriage. *Held*, that the widow was dowable of only the one-fifth remaining absolutely in the husband.

Before HUDSON, J., Barnwell, November, 1884.

This case is fully stated in the opinion of this court.

*Mr. I. L. Tobin*, for appellant.

*Messrs. J. J. Maher* and *C. C. Simms*, contra.

July 18, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The pleadings are not in the case, but from the evidence and the statements of the parties, we gather substantially the following state of facts: Boston Cave died in 1880, having the legal title to three tracts of land, viz., the Hayes tract, 280 acres, the Brown tract, 181 acres, and the Thomas tract, 142 acres. He left a widow, Fanny Cave, and four sons by a former wife, viz., Alexander, David, Henry, and Jacob. He left a will by which he devised one-fifth of his estate to his widow Fanny, and the remaining four-fifths to his aforesaid sons. It appears that at the time of the death of Boston, the plaintiff, Simon Brown, held two mortgages on the aforesaid lands, one upon the parcel known as the Thomas tract, given to one Dowling, and assigned to him, and one upon the entire tract given to him. The testator was further indebted to him on note and open account, and to secure this indebtedness the four sons gave him a mortgage of their undivided interests in the land. The action originally was instituted to foreclose these three mortgages, and also to subject the one-fifth devised to Fanny, the widow, to the payment of the debts for which the sons had given their mortgage, and Fanny, as one of the devisees, was made a party. The adult defendants did not answer. It was referred to the master to ascertain the amount due, &c. He made his report, which was confirmed.

At this stage of the proceeding Fanny Cave put in an answer,

setting up a claim for dower in all the lands, subject to the Dowling mortgage, which was executed before her marriage with Boston. Whereupon the four sons also answered, resisting the claim of dower by their stepmother, except as to one-fifth of the land, in respect to which they admitted her right, subject to the Dowling mortgage. This substantially changed the nature of the action, and made it really a claim for dower on the part of the widow, Fanny. Upon this issue the allegations on the part of the sons were, that the several parcels of land (though legal title in Boston) were bought by Boston and themselves together, and were paid for by the five together, each contributing one-fifth of the purchase money, with the mutual understanding that the titles should be taken in Boston's name for their equal benefit as tenants in common; that they occupied and used the land in common; each holding a several possession and planting separately, and that such possession was held under said agreement from the time of the several purchases to the death of Boston, the testator. They claimed that Boston held the legal title in trust for them as equitable tenants in common with him to the extent of their several undivided shares, and that they were entitled to partition, but as against the creditor they did not insist upon that right. They did, however, insist that Fanny Cave intermarried with Boston after the lands had been purchased and the parties were in possession under said agreement, and therefore any inchoate right of dower which may have accrued upon the marriage was subject to their rights as tenants in common, and that the dower should be limited to the undivided fifth part of the land, which was the share of Boston. In this new phase of the case, it was again referred to the master to take the testimony in relation to the claim of dower, which is all printed in the Brief.

The cause came on for hearing before Judge Hudson, who found as matter of fact, "that Boston Cave and his four sons were the joint purchasers of the several tracts of land involved in this controversy, although the title was taken in the name of the father. They labored in common and purchased the land in common, but mortgaged and contracted in the name of Boston Cave. There is abundant evidence to sustain this conclusion,

exclusive of the testimony of the sons, which is, I think, excluded under section 400 of the code. That the debts for which Boston gave mortgages prior to his marriage, were really the debts as well of his sons by his first wife," &c.; and as matter of law he held as follows: "In a Court of Equity, therefore, this real estate must be regarded as belonging, one-fifth to Boston Cave's estate, and one-fifth to each of the four sons. The widow, therefore, of Boston Cave will take dower in the share of her deceased husband, but subject to one-fifth of the liens created thereon by Boston Cave prior to his marriage. Now, as all the lands must be sold under the mortgages in this suit, and consequently the widow must take dower in the proceeds, so to speak, the only mode of assessment will be to take one-fifth of the entire proceeds of the sale of the lands, then subtract therefrom the one-fifth of the amount of the mortgage liens (Dowling) existing on said lands prior to Boston's marriage. This will leave the estate of which she is endowed. Of this net sum she is entitled to the one-sixth, plus the interest thereon since her husband's death," &c.

From this decree the widow, Fanny Cave, appeals to this court upon the grounds: 1. Because the testimony does not prove the existence of a trust. 2. Because the testimony does not show that the purchase money, or any definite portion thereof, was paid by the alleged *cestuis que trust* at the time of the purchase. 3. Because his honor erred in permitting parol proof to show that the purchase was made for the benefit of, or on account of, the alleged *cestuis que trust*, they having made no payment at the time of the purchase, which is the foundation of such a trust. 4. Because his honor erred in holding, substantially, that after advances or funds subsequently furnished can, in the law, create a resulting trust. 5. Because there was no plain proof of the application of the funds of the party, for whose benefit the trust is sought to be raised, and a trust cannot be raised by construction merely. 6. Because the testimony of Simon Brown, a party in interest, was inadmissible to prove declarations and transactions between himself and the deceased, and his honor erred in admitting the same. 7. Because all the testimony introduced to prove the trust, as well parol as written,

was vague, uncertain, and indefinite, and does not furnish the clear proof that the law requires.    8. Because the testimony of John A. Hays, the grantor of the deceased, Boston Cave, under warranty deed of the property, the subject matter of the controversy, was inadmissible to prove "declarations and transactions" between himself and the deceased in reference to same, &c.

First. As to the exceptions concerning the admission of testimony, proof, &c.   We do not see that it was error to admit the testimony of John A. Hays, who sold and conveyed with warranty one of the tracts of land.   He was not a party to the proceedings, and had no interest in the determination of the action, whether Fanny Cave should have dower in the whole of the lands, or only in a part of it.   Besides, he testified that he made the trade with the sons as well as with Boston.   "A. C. Cave and the father told him they were acting for all the parties.   They said they could not buy unless all the boys and the old man joined together."   The testimony of Simon Brown did not refer exclusively to "transactions and communications" with the deceased, Boston Cave, but also with his sons, who are still living, and to that extent the objection does not apply.   He says : "A. C. Cave came to me and asked me to buy a tract of land which adjoined him for him and his brothers and father. This.is the land which I sold them for $1,000, and they paid me some cash. I did not deliver the title until the money was paid.   Each of the boys and the old man brought me cotton—each one paying his share. When I sold the land they asked me to make the title to the old man and each would pay me $200, and they would divide it after the land was paid for," &c.

As to the testimony of the four sons, which the judge excluded as not admissible under section 400 of the code.   The respondents, in case it should be necessary, gave notice that they would insist that said testimony should have been received and considered by the Circuit Judge.   Section 400 of the Code has certainly given rise to many difficult questions, and unless it is applied with careful consideration, the danger is that it may produce the very injustice it was intended to prevent.   It is not clear that an action for dower (to which this seems to be reduced) can be said to be "prosecuted" by the widow as "executrix, heir

at law, next of kin, assignee, legatee, devisee, or survivor" of her deceased husband. But, as we agree with the Circuit Judge that there was sufficient evidence in the case, without considering that which involved "transactions or communications" with the deceased, Boston Cave, it is unnecessary to make any ruling upon the point, and we prefer to reserve our judgment.

We have read all the testimony with care, and considering only that which was undoubtedly admissible, we concur in the findings of fact of the Circuit Judge that the sons and the father agreed to purchase, and did purchase, the lands together, each having an equal interest, and in pursuance of that agreement the titles were taken in the name of the father in trust for all of them, to the extent of their respective interests. The parol evidence alone established the existence of such agreement, and it was strongly corroborated by the conduct of the parties, and the very terms of the father's will, which, seemingly in accordance with the terms of the agreement, gave to the aforesaid four boys four fifths of the lands and to his widow, Fanny, only his own share, one-fifth.

But it is contended that most of the testimony was parol, and being introduced to establish a verbal agreement, in conflict with absolute conveyances of land, should have been rejected under the statute of frauds. This case in several particulars is very much like that of *Mims* v. *Chandler* (21 *S. C.*, 480), in which this court had occasion to consider the admissibility of parol evidence to establish the facts which will suffice for the purpose of raising a resulting trust, and also the particulars and circumstances of part performance which will take a case out of the statute of frauds. There is no doubt that a resulting trust, or the facts necessary to raise it, may be proved by parol; and we incline to think that the facts proved here made out such a trust in favor of the four sons as to their respective interests of one-fifth in the said lands. Each certainly paid his part of the purchase money, and it has often been said that the whole foundation of the trust is in the payment of the money.

But the objection is interposed that it does not appear that the four sons each paid a definite portion of the purchase money at the time of the purchase, which was necessary according to the

case of *Ex parte Trenholm*, 19 *S. C.*, 127. When must .the purchase be considered as having been made ? When the minds of the parties first met in verbal agreement or at .the time the titles were executed ? We take it that, in reference to the rule in question, we must consider the purchase made when it was consummated by conveyance; and, if so, it is certain that, at least as · to two of the purchases, the deeds were not executed until after the whole purchase money was paid, each having paid his part. We suppose that a payment made before the execution of the deed would, in the sense of the rule, be a payment at the time of the purchase. In the case of *Taylor* v. *Mayrant* (4 *DeSaus.*, 516), it is said : "It appears from the authorities quoted that a resulting trust cannot be raised by construction. It must be grounded on plain proof of the application of the funds of the party for whom it is raised."

But if there should be any serious difficulty as to the proof to raise a resulting trust, it would seem that there can be no doubt that there was ample proof to take the case out of the statute of frauds by part performance. "It is well settled that the Court of Equity will enforce specific performance of a contract within the statute when the parol agreement has been partly carried into execution. The distinct ground upon which Courts of Equity interfere in cases of this sort is that otherwise one party would be able to practise a fraud upon the other." 2 *Story Eq.*, § 759; *Mims* v. *Chandler, supra.* We think the possession of the parties of their respective shares with the knowledge and consent of Boston, the improvement and cultivation of the same without notice or warning, considered in connection with all the circumstances, and especially the payment of the purchase money, were sufficient evidence of part performance to take the case out of the statute. The agreement alleged by the respondents was proved. They had the equitable right to have specific performance of that agreement, and, if they chose, partition, giving to each his share in severalty. *Johnson* v. *Gilbert*, 13 *Rich. Eq.*, 42.

The only remaining question is whether this equity was sufficient to bar the widow's right to dower, which is generally considered a legal right. All the deeds had been executed on De-

cember 19, 1876, when Boston Cave intermarried with Fanny. At that time the equitable right of the parties had attached, and the four sons were living upon and cultivating their respective parcels. The widow's inchoate right to dower originated in her marriage with Boston Cave, and must be considered as arising subject to the state of things which existed at that time. "As a general principle, it may be observed that the wife's dower is liable to be defeated by every subsisting claim or encumbrance in law or equity, existing before the inception of the title, and which would have defeated the husband's seizin. An agreement by the husband to convey before the dower attaches will, if enforced in equity, extinguish the claim to dower * * * . The right to dower is regulated in equity by the nature of the property in the equity view of it," &c. 4 *Kent*, 50; 1 *Scrib. Dow.*, 591, 594, 410. "The principle is that the widow can have dower of no greater or better estate than existed in the husband at some period during the coverture. Her right attaches subject to all encumbrances or equities existing at the time of the marriage or attaching with the purchase by the husband, and is liable to be defeated by every subsisting claim which might have defeated the husband at the period of his best estate." 1 *Scribner*, 564, 410; and see *Jones* v. *Miller*, 17 *S. C.*, 380, and *Shiell* v. *Carderelli*, and *Same* v. *Sloan and Seibels*, 22 *Id.*, 151.

The judgment of this court is that the judgment of the Circuit Court be affirmed.