[Civ. No. 5218. First Appellate District, Division Two.—October 28, 1925.]

ETHEL M. DIMITY, as Administratrix, etc., Appellant, v. A. H. DIXON et al., Respondents.

[1] APPEAL—NOTICE — DESCRIPTION OF JUDGMENT — CONSTRUCTION.— Notices of appeal are not strictly construed, and an appeal will not be dismissed because of a misdescription of the judgment or order to which it relates unless it appears that the respondent has been misled by such misdescription.

[2] ID. — SEPARATE JUDGMENTS — NOTICE TO SEVERAL DEFENDANTS.— Where several defendants are joined and separate judgments are entered as to each, a notice of appeal specifically designating one of these judgments cannot be interpreted to include others not mentioned.

[3] TRUSTS—PARTNERSHIP FUNDS—PURCHASE OF PROPERTY—TITLE IN INDIVIDUAL PARTNER—TRANSFER—BURDEN OF PROOF.—In this action to establish a trust in certain real property alleged to have arisen by reason of the purchase of such property with the funds of a partnership by one of the partners, who took title in his own name, a portion of which was conveyed, after his death, by the distributees of his estate in due course of administration to a third person for a valuable consideration, plaintiff failed to sustain the burden which the law cast upon her to show that said third person was either not a purchaser for value or one with knowledge of the purported partnership.

[4] ID.—CREATION OF EXPRESS TRUST—PAROL AGREEMENT—PLEADING. In such action, the complaint which alleged that the partners purchased the property with the assets of the firm and at the time orally agreed that one partner, the father of the other partners, should take the title in his name and hold it in trust, not for the partnership, but for the two sons, was an attempt to plead an express trust resting in parol, and was defective by reason of section 852 of the Civil Code, which requires such a trust to be created by written instrument.

[5] ID.—APPLICATION OF PARTNERSHIP FUNDS TO PURCHASE OF REAL ESTATE BY INDIVIDUAL PARTNER — RESULTING TRUSTS. — In such action, the fact that the father with the consent of the two sons used a portion of the assets of the firm to purchase the real property, the title to which he took in his own name, did not constitute a resulting trust.

1. See 2 Cal. Jur. 315; 2 R. C. L. 109.
4. See 25 Cal. Jur. 154.

[6] ID.—PURCHASE OF LAND—PAYMENT OF CONSIDERATION—INSTALL-MENT PAYMENTS—IMPROVEMENTS.—A resulting trust does not arise through the furnishing of funds to enable a purchaser to complete installment payments on the purchase of property, where title has passed or where funds are furnished to the holder of the legal title for the purpose of making improvements thereon, but such a trust arises, if at all, the instant the conveyance is made and the title vests.

[7] ID.—DISSOLUTION OF PARTNERSHIP—FIDUCIARY RELATIONS—CON-STRUCTIVE TRUST.—In an action to establish a trust in certain real property alleged to have arisen from the purchase of such property with the funds of a partnership by one of the partners, who was the father of the other two and who took title in his own name, assuming that a constructive trust arose because of the fiduciary relationship of the father and sons while they composed the partnership, after the dissolution of the partnership under section 2450 of the Civil Code, by reason of the death of one of sons, it became the duty of the father (assuming that he held the property in trust for the partnership) to account to the other partners, or their successors in interest, for the partnership assets which he held, and having failed to do this and having continued to retain possession of the property and to exercise the right of ownership over it, he became a trustee for the equitable owners by operation of law, and the trust estate thus created was a constructive trust as distinguished from an express or a resulting trust.

[8] ID.—DEATH OF PARTNER—ACCRUAL OF CAUSE OF ACTION—STATUTE OF LIMITATIONS. — In such action, assuming that a constructive trust was intended to be pleaded, the cause of action arose upon the death of one of the partners in October, 1914, and suit not having been commenced until February, 1923, it was barred by the statute of limitations.

[9] ID.—CONSTRUCTIVE TRUST—STATUTE OF LIMITATIONS.—The statute of limitations in the case of a constructive trust begins to run upon the doing of the act by which the trust arose.

[10] ID.—COMMINGLING OF PROPERTY—CONSENT OF TRUSTOR—REME-DIES.—Where property, with the consent of the trustor, has been commingled with the property of the trustee, so that no part of it can be definitely traced and segregated from that held by the trustee, or identified as a part of any fund or property, none of it can be considered as the property of the trustor, and where the identity cannot be traced the trustor is forced to rely upon

---

6.  See 25 Cal. Jur. 184.
9.  See 25 Cal. Jur. 274; 17 R. C. L. 794.
10. See 25 Cal. Jur. 200; 26 R. C. L. 1355.

the personal liability of the trustee and has no special lien upon the general estate of the trustee which is superior to that of any other creditor, his only remedy being a personal action for damages or for money had and received.

---

(1) 3 C. J., p. 1223, n. 25, p. 1226, n. 57.  (2) 3 C. J., p. 1225, n. 49.  (3) 39 Cyc., p. 631, n. 11, p. 635, n. 27.  (4) 39 Cyc., p. 620, n. 47.  (5) 39 Cyc., p. 134, n. 3.  (6) 39 Cyc., p. 128, n. 79.  (7) 39 Cyc., p. 186, n. 74.  (8) 37 C. J., p. 909, n. 61.  (9) 37 C. J., p. 910, n. 66.  (10) 39 Cyc., p. 541, n. 44, p. 559, n. 29.

APPEAL from judgments of the Superior Court of Kern County. Erwin W. Owen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred Siemon, Siemon & Gartier and L. E. Nathan for Appellant.

Borton & Petrini, Claflin & Lambert and W. A. McGinn for Respondents.

NOURSE, J.—On February 13, 1923, plaintiff commenced this action to impress upon certain real property a trust which she alleged arose from the purchase of such property with funds of a partnership which she alleged had been formed by her former husband, O. G. Dixon, his father, F. S. Dixon, and his brother, A. H. Dixon, some time in the year 1908 for the conduct of an undertaking business in the city of Bakersfield. The plaintiff alleged that her husband, O. G. Dixon, died on October 6, 1914, and that his father, F. S. Dixon, died some time after February 10, 1920; that, in due course of administration, certain property was distributed to the defendant, Hannah Dixon, the widow of F. S. Dixon, and to the defendant, A. H. Dixon, the surviving son; that these parties conveyed the properties so distributed to them—a portion thereof to one Gettle, and a portion to the defendant, Jessie C. Dixon. It is alleged, on information and belief, that F. S. Dixon in his lifetime and A. H. Dixon collected large sums in rents and profits of said property and demand is made for an accounting. Jessie C. Dixon was joined as a defendant on the theory that she was a purchaser of a portion of the property without consideration

and with full knowledge of the alleged trust. Answers were filed putting in issue all the material allegations of the complaint and the cause went to trial before the court, sitting without a jury, on November 7, 1923. At the close of plaintiff's case defendants A. H. and Hannah Dixon moved for a nonsuit, in which motion the defendant Jessie C. Dixon joined. The motion was granted, and on November 9, 1923, judgment of dismissal as to A. H. and Hannah Dixon was duly entered therein and recorded on November 10, 1923. On January 28, 1924, a paper entitled "Findings of Fact and Conclusions of Law" was filed which concluded with a judgment of dismissal in favor of Jessie C. Dixon. On February 13, 1924, the plaintiff filed her notice of appeal from the judgment, the notice specifying the judgment "dated November 10, 1923, and entered November 10, 1923."

In a former opinion we dismissed the appeal from the judgment in favor of A. H. and Hannah Dixon on the ground that the appeal was not taken within the time required by section 939 of the Code of Civil Procedure, and we dismissed the appeal from the judgment in favor of Jessie C. Dixon upon the ground that the record disclosed that no notice of appeal had been filed. Upon a petition for rehearing the appellant filed an addition to the transcript from which it appears that a motion for a new trial for the purpose of vacating the judgment of November 10, 1923, in favor of A. H. and Hannah Dixon was filed on November 17, 1923, and denied on January 14, 1924. Upon this showing we concluded that the notice of appeal from this judgment was within time and that as to these respondents the cause should be° determined upon the merits.

The record as amended, however, still fails to disclose any notice of appeal from the judgment in favor of Jessie C. Dixon filed on January 28, 1924. The appellant argues in support of this appeal that it was her intention to appeal from both judgments and states that both judgments were of like character. In this respect, however, she is not supported by the record. The judgment of November 9, 1923, referred exclusively to the defendants A. H. and Hannah Dixon and was based upon the ground that there was a failure of proof that O. G. Dixon fur-

nished any part of the consideration for the purchase of the property, the proceeds of which were claimed to be a trust estate. On the other hand, the judgment filed January 28, 1924, related to Jessie C. Dixon exclusively and was based upon the additional ground that there was a failure of proof that when Jessie C. Dixon had purchased the property she was not an innocent purchaser for value and without notice of the existence of the alleged trust. The fact that the two judgments were separately treated is further emphasized by reference to the notice of motion for new trial which related to and concerned the judgment against A. H. and Hannah Dixon only and was in fact filed prior to the entry of the later judgment in favor of Jessie C. Dixon.

[1] Reference is made to *Harrelson* v. *Miller & Lux,* 182 Cal. 408 [188 Pac. 800], and similar cases holding that a notice of appeal should be liberally construed and that an appeal should not be dismissed for a mere misdescription of the judgment from which the appeal is intended to be taken. We think the rule stated in *Harrelson* v. *Miller & Lux, supra* (p. 414), is applicable here. It was there said: "Notices of appeal are not strictly construed, and an appeal will not be dismissed because of a misdescription of the judgment or order to which it relates unless it appears that the respondent has been misled by such misdescription." Here the case is not one of misdescription of the judgment but is one where the description of one of two judgments is so clear and unmistakable as to preclude a description of the other judgment which is not mentioned. [2] In a case where several defendants are joined and separate judgments are entered as to each a notice of appeal specifically designating one of these judgments cannot be interpreted to include others not mentioned.

Though we are satisfied that for this reason the purported appeal from the judgment in favor of Jessie C. Dixon should be affirmed we have made further examination of the record as to this branch of the case and are satisfied that the judgment as to her must be affirmed upon the merits. The appellant alleged that on the 24th of April, 1922, Hannah and A. H. Dixon conveyed four lots to Jessie C. Dixon, the wife of defendant A. H. Dixon, and

then alleged, on information and belief only, that Jessie
C. Dixon paid no valuable consideration for said convey-
ance and that she knew and had full knowledge at the
time that the property had been held by F. S. Dixon prior
to his death in trust for the members of the alleged part-
nership. In support of these allegations of the complaint
the appellant offered the testimony of Mrs. Hannah Dixon
only and now argues that this testimony shows that no
consideration was paid by Jessie C. Dixon. To support
this argument the appellant adopts the 'method of citing
a portion of the testimony only, omitting that portion
which completely negatives her claims. Appellant cites
the following testimony of this witness: "I did not under-
stand it. I deeded that property to Jessie Dixon because
I did not want to be bothered with it. . . . She never
paid me any money." In the next line of the testimony
of the same witness we find: "She paid him (A. H. Dixon)
and of course he looks after all my business." [3] There
is no evidence of any character that at the time of the
conveyance Jessie C. Dixon had any knowledge of the pur-
ported trust or that she at any time had any knowledge
of the purported partnership. The appellant has there-
fore failed to sustain the burden of proof which the law
casts upon her to show that Jessie C. Dixon was either not
a purchaser for value or one with knowledge of the al-
leged infirmities. (*Tillaux* v. *Tillaux*, 115 Cal. 663, 668
[47 Pac. 691].)

The case against A. H. and Hannah Dixon presents nu-
merous difficulties which are not discussed in the brief.
The complaint alleges that F. S. Dixon and his two sons,
A. H. and O. G., constituted a partnership in the year
1909 for the purpose of conducting an undertaking busi-
ness in the city of Bakersfield; that on December 16th of
that year the "said partners" purchased a tract of land
in the city of Bakersfield for the sum of seven thousand
dollars, which sum constituted a part of the assets of the
partnership and one-third of which belonged to O. G.
Dixon; that at the time of the purchase it was orally
agreed among the said partners that the property should
be conveyed to F. S. Dixon and that the title thereto
should be held by him for the use and benefit of the other
members of the partnership; that *thereafter* the "said

partners" expended a large sum of the "partnership assets" on the construction of an apartment house upon said premises, of which assets O. G. Dixon owned one-third; that O. G. Dixon died on the 6th of October, 1914; that thereafter and on the tenth day of February, 1920, F. S. Dixon sold said property and invested the proceeds thereof in the purchase of other land designated as lots 1 to 8, inclusive, of block 115 in the city of Bakersfield; that thereafter said F. S. Dixon died and in due course of administration the said property was distributed to Hannah Dixon and A. H. Dixon; that on September 28, 1921, said Hannah Dixon and A. H. Dixon sold lots 1 to 4, inclusive, of said tract to a stranger to this action and that they invested the proceeds from such sale in other properties, the nature and description of which is unknown to the pleader; that on April 24, 1922, said Hannah Dixon and A. H. Dixon conveyed lots 5 to 8, inclusive, of said tract to Jessie C. Dixon, who paid no valuable consideration for the conveyance and took with full knowledge of the existence of the alleged trust; that F. S. Dixon, prior to his death, and A. H. Dixon had collected large sums of money on account of the rents, issues, and profits of said real property and that the said A. H. Dixon had invested the same in other tracts of land, the character and description of which is unknown to the pleader; that prior to the commencement of this action demand was made upon A. H. and Hannah Dixon that they render an account of the proceeds realized by them from the sale of such ,properties, but this they refused to do. The complaint concluded with a prayer that the property first described be decreed to be held by F. S. Dixon in trust for O. G. Dixon as to a one-third portion thereof; that the title to the property described as lots 5 to 8, inclusive, of block 115, be adjudged to be held in trust by Jessie C. Dixon as to a one-third portion thereof for the benefit of this appellant and that A. H. Dixon and Hannah Dixon be required to account to the appellant for the rents, issues, and profits of the various tracts of land described in the complaint.

[4] The case is founded upon the theory that the father and two sons were partners in the undertaking business, of which each owned a one-thrd interest, and that the real property purchased in the year 1909 was purchased by

these partners and held by the father in trust for his two sons. We will pass the question of the sufficiency of the proof of the existence of this partnership and assume that the evidence was sufficient to make *prima facie* proof of the original partnership. Turning to the allegations of the complaint, we find that these partners purchased the land in question with the assets of the firm and at the time *orally* agreed that the father should take the title in his name and hold it in trust, not for the partnership, but for the two sons. We have, then, an attempt to plead an express trust resting in parol. Herein the pleading fails by reason of section 852 of the Civil Code, which requires such a trust to be created by written instrument. But aside from the character of the pleading there is not a word of evidence tending to prove the oral agreement. In so far as the land itself is concerned there is, therefore, a complete failure of both pleading and proof to establish a valid express trust. Assuming, however (though, as we have said, these matters are not mentioned in the briefs), that the appellant relies upon these facts as constituting a resulting trust, we are faced with this situation so far as the land itself is concerned. [5] The allegations of the complaint are that the father, with the consent of the other partners, used a portion of the assets of the firm to purchase real property, the title to which he took in his own name. Such a transaction does not constitute a resulting trust. "Partners have an unquestionable right to deal with the funds of the firm as they please; and if, with their consent or knowledge or acquiescence, a portion of their funds is applied to the purchase of real estate in the name of an individual member, and as his private property, there is in such case no resulting trust." (*Lefevre's Appeal*, 69 Pa. St. 122 [8 Am. Rep. 229, 233].)

Though the complaint alleges that seven thousand dollars of the partnership funds was paid for the land, the proof was that the sum of two thousand five hundred dollars only was paid. The evidence further showed that the father purchased the undertaking establishment for seven thousand dollars and that after conducting it for a period of nine months sold it for the same price; that after using the sum of two thousand five hundred dollars for the purchase of the land in question the father borrowed on his

74 Cal. App.—46

own credit sufficient money to erect the apartment house. Though there is neither pleading nor proof of the dissolution of the partnership nor of any adjustment of the individual interests of the members thereof, it would appear that in the main the purchase of the realty was effected by the use of the portion of the assets belonging to the father individually. Thus again assuming that a resulting trust is sought to be established, there is complete failure of proof that O. G. Dixon furnished the consideration for the purchase of the realty either in whole or in part.

[6] Coming, then, to the allegations of the complaint relating to the use of the proceeds of the partnership in the construction of the apartment house, we find that no special agreement is pleaded and we assume, therefore, that it is the contention of the appellant that in this respect a resulting trust was created because of the allegation that the partnership furnished a portion of the consideration. In this respect we are met by the well-known rule that a resulting trust arises, if at all, the instant the conveyance is made and the title vests. It does not arise through the furnishing of funds to enable a purchaser to complete installment payments on the purchase of property where title has passed or where funds are furnished to the holder of the legal title for the purpose of making improvements thereon. (*Lincoln* v. *Chamberlain,* 61 Cal. App. 399, 401 [214 Pac. 1013].) It would seem, therefore, that there is a complete failure of proof to show either a valid express trust in either the land or the improvements thereon or to show a valid resulting trust in either.

[7] Assuming, however, that it may be the contention of appellant that a constructive trust arose because of the fiduciary relationship of the father and sons while they composed the partnership, the case is no less difficult than under the other cases which have been discussed. If a trust was created whereby F. S. Dixon was obliged to hold the property for the benefit of the partnership, such trust terminated upon the death of one of the partners, O. G. Dixon, in October, 1914. (26 R. C. L., p. 1210, sec. 52.) The partnership having been dissolved by the death of one of the partners (sec. 2450, Civ. Code), it became the duty of F. S. Dixon (assuming again that he held this property in trust for the partnership) to account to the other part-

ners, or their successors in interest, for the partnership
assets which he held. Having failed to do this and having
continued to retain possession of the realty and to exercise
the right of ownership over it, he became a trustee for the
equitable owners by operation of law and the trust estate
thus created was a constructive trust as distinguished from
an express or a resulting trust. We do not propose to en-
ter into a discussion of the various lines of distinction be-
tween these different classes of trusts. The whole subject
matter is covered in the opinion of Justice Olney in *Le-
zinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240 [196 Pac.
884]. The discussion in that opinion as to the effect of a
variance between pleading and proof when these different
kinds of trusts are involved is pertinent here, and we quote
from page 243: "We may grant, at least for the purposes
of discussion, that it would not be a material variance if
the complaint were based upon the alleged existence of an
express trust and the findings showed but a resulting trust.
But it should be noted at the outset that the variance is
material if the findings show facts which would possibly
create a trust, but such trust would be neither an express
nor a resulting trust, but what is commonly designated as
a constructive one, that is, a trust based on fraud, or,
what is really a particular kind of fraud, a breach of some
duty incident to a fiduciary relation. The complaint con-
tains no allegations of fraud or breach of fiduciary duty
or of facts from which either would appear, and a cause
of action based upon such facts is manifestly very differ-
ent from one to enforce either an express or resulting
trust, based as they are upon the intention of the parties,
expressed in one case and presumed in the other." [8]
Bearing in mind that the complaint falls far short of
pleading a constructive trust, but assuming again that this
was what was intended to be pleaded, we are faced by the
plea in both demurrer and answer that the complaint is
barred by the statute of limitations. It would seem on
the face of the complaint that this plea was good because
the trust arose, if at all, upon the death of O. G. Dixon
in October, 1914, and the action was not commenced until
February, 1923. [9] In the case of a constructive trust
the statute begins to run upon the doing of the act by

which the trust arose. (*Varrois* v. *Gommet,* 43 Cal. App. 756, 759 [185 Pac. 1001].)

[10] There is a further difficulty which, aside from any of the points heretofore discussed, is fatal to a recovery on the part of appellant on the record as here presented. It is the commonly accepted rule that ''Where property, with the consent of the trustor, has been in that manner commingled with the property of the trustee, so that no part of it can be definitely traced and segregated from that held by the trustee, or identified as a part of any specific fund or property, none of it can be considered as the property of the trustor. 'The right of pursuing it fails when the means of ascertainment fails. This is always the case where the subject matter is turned into money and mixed and confounded in a general mass of property of the same description.' Where the identity cannot be traced the trustor 'is forced to rely upon the personal liability of the trustee . . . He has no special lien upon the general estate of the trustee which is superior to that of any other creditor,' and his only remedy is a personal action for damages or for money had and received.'' (*Estate of Arms,* 186 Cal. 554, 561 [199 Pac. 1053, 1055].) Now, the complaint alleges that a trust was intended to be applied to the premises and to the Dixon apartments which were purchased by F. S. Dixon in the year 1909. It also alleges that, after the conveyance, assets of the partnership were used in the construction of the apartment house. It appears from the evidence that two thousand five hundred dollars were used in the purchase of the land and that the apartments were built in part from proceeds from the undertaking business but largely from loans obtained on the credit of F. S. Dixon alone. It appears, therefore, that from the time of the conveyance the funds which F. S. Dixon obtained from the business were constantly commingled with his own and no attempt has been made by either pleading or proof to segregate or designate as a part of the trust fund any property now in the possession of any party to the action. Furthermore, the pleading is that the trust was created solely for the purpose of holding the property designated as the Dixon apartments in trust for the members of the partnership. If this is so, the trust was repudiated in the sale of the premises by

the trustee in February, 1920. If at that time a valid constructive trust existed in favor of the estate of O. G. Dixon, it could be followed into the property of the parties to this action only by allegation and proof that the proceeds thereof went into property now held by them and which is specifically described. Far from meeting these requirements, the complaint alleges that after Hannah and A. H. Dixon obtained the property as distributees in the F. S. Dixon estate they sold a portion thereof to a stranger to the action and invested the proceeds thereof in property unknown to the pleader, but as to the other portion thereof they sold to Jessie C. Dixon, who took with notice and without consideration. Now, the proof is that the property was distributed not to Hannah and A. H. Dixon, as alleged in the complaint, but to Hannah Dixon alone. As to A. H. Dixon, therefore, there is no property upon which a trust could be settled. Coming now to the four lots conveyed to the stranger to the action by Hannah Dixon, the appellant successfully alleges herself out of court by failing to plead that this purchaser did not take without notice and for a valuable consideration. As to the remaining four lots which were conveyed to Jessie C. Dixon, we have already seen that the proof wholly fails to show that she took with notice or that she did not pay a valuable consideration. It was also shown as a part of appellant's case that Hannah Dixon at the time of the trial had no property upon which a trust could be settled in favor of the appellant. As to the respondent, A. H. Dixon, the only proof was that he *did not* receive any of the property coming down from the original conveyance and no effort was made to show that he had any of the profits from any of the transfers thereof. At the close of appellant's case, therefore, the uncontradicted evidence was that there was no property in the hands of any of the respondents which could be impressed with any trust in favor of the appellant.

As to that portion of the prayer of the complaint which asked for an accounting from A. H. and Hannah Dixon of the rents, issues, and profits of the various tracts of land mentioned in the complaint, it is sufficient to say that as to Hannah Dixon the complaint wholly fails to put that matter in issue, and that as to A. H. Dixon there is no

proof of any nature that he received any rents, issues, or profits of any of the property mentioned in the complaint. Judgments affirmed.

Sturtevant, J., and Langdon, P. J., concurred.