[Civ. No. 12494.   First Dist., Div. One.   May 29, 1945.]

JULIUS NEUSTED, Respondent, v. JOSEPH SKERNS-
WELL, Appellant.

Marcel E. Cerf, Robinson & Leland for Appellant.

Joseph A. Brown for Respondent.

DOOLING, J. pro tem.—This action was one seeking to establish a trust for plaintiff in an undivided one-half interest in a parcel of real property in San Francisco, for an accounting of the income therefrom, and for a partition and sale thereof. An interlocutory decree was entered adjudging plaintiff and defendant Skernswell to be each the owner of an undivided one-half interest in the property, subject to a mortgage lien, appointing a referee to take an accounting, appointing the same person receiver to take charge of the property and sole referee in partition and directing him to sell the property. From this interlocutory decree defendant appealed on July 18, 1941. On the appeal from this decree appellant attacks the sufficiency of the complaint and the sufficiency of the findings and of the evidence.

The action was commenced by the filing of a complaint which alleged:

"That the plaintiff and defendants are the owners of the following real property situate, lying and being in the City and County of San Francisco. . . .

"That the title to the said property was taken in the name of Joseph Skernswell and he holds the same as Trust for plaintiff and defendant and that plaintiff furnished the money with which to buy the same and performed the work and labor to put the said property in good and rentable condition.

"That the plaintiff seeks this court to decree and determine that plaintiff is the owner of an undivided one-half interest in said property and plaintiff desires the same partitioned and sold by reason of the fact that it cannot be divided in kind, it being that the same consists of a hotel building erected upon the above described real property."

A demurrer, general and special, was interposed by defen-

dant and appellant. The demurrer was overruled. It should have been sustained.

The allegation that "the plaintiff and defendants are the owners" of the property fails to state the proportionate interests of the respective parties. Regarded as a pleading in an ordinary quiet title action it should at the very least state the proportionate undivided interest in the property owned by the plaintiff, and in an action for partition the statute expressly requires the proportionate interests of all parties to be alleged or if any of them are unknown that fact must be expressly pleaded. (Code Civ. Proc., § 753; 20 Cal.Jur. 624-625.)

The attempted allegation of ownership is furthermore qualified by the allegations of the succeeding paragraph. It appears therefrom that the full legal title stands in the defendant Skernswell who is alleged to hold the property "as Trust for plaintiff and defendant." This allegation is equally subject to the vice heretofore noticed in the preceding paragraph in that it fails to allege the proportionate interests of the parties. ■ The allegation that defendant holds the property "as Trust" is a naked conclusion of the pleader. The allegation immediately following that "plaintiff furnished the money with which to buy the same and performed the work and labor to put the said property in good and rentable condition," is not sufficient to support the pleaded conclusion of a trust. To create a resulting trust the purchase price must either be paid by the *cestui que trust* before the title is conveyed or he must assume an obligation to pay it before the conveyance. (*Woodside* v. *Hewel*, 109 Cal. 481, 485 [42 P. 152]; *Viner* v. *Untrecht*, 26 Cal.2d 261, 270 [158 P.2d 3]; 2 Rest., Trusts, § 457.) The complaint fails to allege either of these necessary facts.

■ The allegation that "the plaintiff seeks this court to decree and determine that plaintiff is the owner of an undivided one-half interest" adds nothing to the previous allegations. This is not an allegation that plaintiff *is* the owner of an undivided one-half interest, but only that he seeks the court to so decree. It is, as appellant says, only a misplaced prayer for relief, not an allegation of ownership.

In the absence of a special demurrer, if the complaint in this case had alleged the proportionate interests of the parties, it might have been sufficient to allow proof of an express trust

under the rule laid down in *Knapp* v. *Knapp*, 15 Cal.2d 237, 241 [100 P.2d 759]. Because the proof failed to satisfy the statute of frauds the question of express trust is not involved, and the complaint was not sufficient as a pleading of a resulting trust even against a general demurrer. In *Knapp* v. *Knapp* the Supreme Court said of a pleading somewhat less defective (p. 241):

"However, such pleading is not to be commended . . .; it adds difficulties and delay to litigation and tenders issues framed with scant facts. One who has a cause of action should frankly state the facts upon which he relies and not bring them out of a fog of doubt and uncertainty only when required by the lash of a special demurrer."

In the case before us the appellant applied the lash not once, but four times. He demurred generally and specially to the complaint. He objected to the introduction of any evidence on the ground of the insufficiency of the complaint. He raised the point again on motion for nonsuit at the close of plaintiff's case, and he argued it the fourth time on the final submission. In the face of this persistent attack the complaint stood unamended and as a result the case comes to us still shrouded in a fog of doubt and uncertainty.

The evidence was in sharp conflict and plaintiff's own testimony was in many respects uncertain and contradictory. However, applying the now settled rule, that the weight of such testimony is for the trial court and, if there is substantial evidence to support the finding of a trust, it is for the trial court to determine whether it is clear, satisfactory and convincing (*Viner* v. *Untrecht, supra,* 269 and concurring opinion of Traynor, J., at p. 273), the evidence would support a finding of a resulting trust in plaintiff's favor as to an undivided one-half interest in the property. The trial court might have found that respondent advanced $2,000 to appellant to make the down payment upon the property under an oral agreement that appellant should take the title and hold an undivided one-half thereof in trust for respondent.

Appellant argues that there could be no resulting trust in any event because the money was not advanced to make the down payment until after appellant had a binding contract to purchase the property in his own name. He cites

in support of this argument *Musselman* v. *Myers,* 240 Pa. 5 [87 A. 425] ; 3 Scott on Trusts, section 457, page 2302; *Woodside* v. *Hewel, supra,* and 2 Restatement, Trusts, section 457, page 1397. The case of *Musselman* v. *Myers* and the text of Scott support the point. However, so far as we have been able to discover the Musselman case stands alone among court decisions which have passed upon the precise question. The classic statement of the rule is found in *Woodside* v. *Hewel, supra,* 485, quoting from *Botsford* v. *Burr,* 2 Johns.Ch. (N.Y.) 405: ''The trust must have been coeval with the deed, or it cannot exist at all.''

Bogert states the rule in the following language (2 Bogert on Trusts and Trustees, 1380) :

''If a contract vendee of land has entered into possession, made payments, and agreed to pay the balance of the price to the vendor, and then a third person makes payments on the price with the consent of the vendee, and later a deed is made to the contract vendee, without mentioning any rights of the third party, there is a presumption of a resulting trust in his favor. His payment was made before the delivery of the deed. That it was made after the making of a contract for the sale of the land, in which the contract vendee alone had promised the vendor to pay the balance of the price, is not material. The date of delivery of the deed is the crucial date for fixing the rights of the parties, and not the date of the making of the land contract. True, the contract vendee, in the case supposed, at the time of the making of the land contract, gets an equitable interest in the land solely for his own benefit; but when the deed is delivered to him as the sole grantee, after the payment on the price has been made by the third person with the knowledge and consent of the grantor and grantee, both grantor and grantee, as well as the third party payor, are assumed to intend that the third party's payment shall give him a beneficial interest in the land pro tanto.''

The text of Scott (3 Scott on Trusts, 2302) after stating the contrary rule in support of which the author cites only *Musselman* v. *Myers, supra,* continues:

''In several cases, however, it has been held that if B makes a valid contract to purchase land, and subsequently makes an oral contract with A that if A will pay the whole or a part

of the purchase price, he shall receive a whole or a part of the land, and A does thereafter pay the whole or a part of the purchase price and legal title is conveyed to B, B will hold upon a resulting trust in whole or *pro tanto* for A. In these cases it is said to be sufficient that A's payment was made before the legal title was conveyed to B although made after B had acquired an equitable interest in the property."

The rule was succinctly stated in *Lynch* v. *Herrig,* 32 Mont. 267 [80 P. 240, 242]:

"To establish the existence of a resulting trust, where the land sought to be charged therewith is purchased under an executory contract, the legal title only passing upon full payment of the purchase price, it is sufficient if the money is paid by the person claiming the existence of the trust at any time before such legal title passes."

To the same effect are *Feeley* v. *Feeley,* 72 Mont. 84 [231 P. 908, 910]; *Moore* v. *Moore,* 74 Miss. 59 [19 So. 953]; *Brown* v. *Cave,* 23 S.C. 251, 257; *Murry* v. *Sell,* 23 W.Va. 475, 479; *Heiskell* v. *Powell,* 23 W.Va. 717, 721; *Rexburg Lumber Co.* v. *Purrington,* 62 Idaho 461 [113 P.2d 511]; 1 Perry on Trusts, 7th ed., section 133, page 208. The language of section 457, Restatement, Trusts, is entirely consistent with the rule that payment by a third party at any time before transfer to a contract vendee is sufficient to raise a resulting trust. On principle we are satisfied with the prevailing rule. While the contract vendee has an equitable title it is one subject to be defeated if he fails to pay the purchase price as agreed and the payment by a third party results in the defeasible equitable title being converted into a legal title by the subsequent conveyance.

There is evidence which, if believed, would support the finding that the full down payment was made with respondent's money and that the balance was to be paid from the earnings of the property or by equal contributions of the parties. The respondent testified that by oral agreement an undivided one-half interest was to be held for him in trust. In no event under this evidence could a trust for a greater interest than one-half result. The rule is that one paying a part of the purchase price can in no event secure a greater interest in the property by way of resulting trust than the proportion

that the amount paid by or for him bears to the whole amount paid (3 Scott on Trusts, § 454.1, pp. 2286-2287; 2 Bogert on Trusts and Trustees, § 462, pp. 1413-1414; 2 Rest., Trusts, § 454, comment i., p. 1381; *Juranek* v. *Juranek,* 29 Cal.App. 2d 276 [84 P.2d 195]), but that if he agrees to take a lesser undivided interest than would result normally from the portion of the purchase price paid by him a trust will result only for the lesser interest agreed upon. (3 Scott on Trusts, § 254.2, pp. 2289-2290; 2 Bogert on Trusts and Trustees, § 462, pp. 1411-1412; 2 Rest., Trusts, § 454, comment h., p. 1380.) It is essential that the court find the amounts actually paid or agreed to be paid by the respective parties with certainty in order to determine the respective interests of each. (*Woodside* v. *Hewel, supra,* p. 486; *Breitenbucher* v. *Oppenheim,* 160 Cal. 98, 104 [116 P. 55]; 25 Cal.Jur. 190.) ▉ It should also be observed that contributions to the improvement of the property after title was acquired may not be relied upon to raise a resulting trust. (*Dimity* v. *Dixon,* 74 Cal. App. 714, 722 [241 P. 905]; 2 Rest., Trusts, § 454, comment o., pp. 1385-1386.)

▉ Appellant points to evidence of the respondent that at some time, in conversation with appellant, appellant said that he should have $5,000 more than respondent on the sale of the property because he (appellant) carried the responsibility, and that respondent told appellant that would be all right, and argues that such an agreement would not give rise to a trust, citing *Stewart* v. *Nevins,* 50 Cal. 276, 279. Without passing further on the point it is sufficient here to note that respondent also testified that "I realized the building was in his name at that time," and if the conversation occurred after the conveyance to appellant (a factual matter that may be determined on the new trial) an oral agreement of the sort testified to would be without consideration and ineffective to change the existing rights of the parties, whatever they may have been.

▉ While the evidence would have supported findings from which the conclusion that a resulting trust was raised in favor of respondent would legally follow, no such findings were actually made by the court. The findings were made by reference to the complaint and are subject to all of the vices hereinabove noted in the discussion of the allegations of the

complaint. If the allegations of the complaint are insufficient to state a cause of action, findings that those allegations are true will likewise be insufficient to support the judgment. (*County of San Luis Obispo* v. *Gage,* 139 Cal. 398, 409 [73 P. 174]; *McCarthy* v. *Brown,* 113 Cal. 15, 17-18 [45 P. 14]; *Miller* v. *Gusta,* 103 Cal.App. 32, 37-38 [283 P. 946]; 24 Cal. Jur. 969.)

Since we are satisfied that the complaint did not state a cause of action and that the findings do not support the interlocutory decree that decree must be reversed.

After the appeal was taken from the interlocutory decree on July 18, 1941, a series of subsequent proceedings were had in the trial court, over the objection of defendant, that the appeal from the interlocutory decree stayed all further proceedings in the trial court. As a result of these proceedings we have before us for review on subsequent appeals taken by defendant Skernswell the following orders made after July 18, 1941: Order setting time for hearing accounting; order directing referee to take possession of real property and to collect all rents and income; order directing referee to sell real property; order requiring bond on appeal; order denying motion to set aside report of referee; order denying exceptions and objections to report of referee; order overruling objections to sale of property; and order confirming sale and fixing fee of referee. There is also an appeal from the final decree in partition.

The validity of the several orders appealed from and of the final decree is attacked by appellant upon the ground, among many others, that the appeal from the interlocutory decree operated as a stay of further proceedings in the trial court. The point is well taken. An appeal from an interlocutory decree in partition operates as a stay without bond. (*Born* v. *Horstmann,* 80 Cal. 452 [22 P. 169, 338, 5 L.R.A. 577]; *Williams* v. *Wells Fargo Bank etc. Co.,* 17 Cal.2d 104 [109 P.2d 649].) All further proceedings were stayed by the appeal under these decisions unless the order requiring a bond on appeal next to be noticed was valid.

On August 1, 1941, the trial court made an order requiring a bond on the appeal from the interlocutory decree as a condition of a stay. It was therein provided that "if any stay

of proceedings is desired by appellant . . . the appellant shall give and provide a good and sufficient bond to be approved by this court in the sum of five thousand dollars ($5000.00) conditioned that he shall indemnify the plaintiff against all loss, harm, damage or injury which may occur by virtue of a stay of proceedings and the sale of said real property, if judgment appealed from be affirmed or dismissed (sic).'' This is one of the orders from which appellant has appealed.

Respondent points to no decision or code section giving the court power to exact a bond of this character on appeal from this type of judgment. The applicable section is 949, Code of Civil Procedure. (*Williams* v. *Wells Fargo Bank etc. Co.*, *supra; Zappettini* v. *Buckles*, 167 Cal. 27 [138 P. 696].) It is true, as pointed out in the Williams case, that under section 949, as it now reads, the court may in its discretion in certain cases require an undertaking to stay proceedings pending such an appeal, the condition of such undertaking being, as provided in section 949, ''for the performance of the judgment or order appealed from.'' It is clear that the order for undertaking here in question was not of the character authorized by this section. It seems equally clear that the facts of this case did not fall within the ambit of cases in which such an undertaking may be required in any event, as the following quotation from *Williams* v. *Wells Fargo Bank etc. Co., supra,* 107, demonstrates:

''And although that section allows the court in its discretion to require an undertaking in an amount to be fixed by it 'conditioned for performance of the judgment or order appealed from,' this language has been expressly interpreted to mean 'that a bond may be ordered in such of those cases where the appellant was adjudged to have money or other property in his possession belonging to the respondent, or was required to perform some act for the benefit of the respondent or in pursuance of the directions of the judgment or order appealed from, and that in all other cases the provisions of the section should operate as a stay of proceedings without bond.' ''

The conclusion that the appeal from the interlocutory decree operated to stay all further proceedings in the trial court, and the further fact that the several orders appealed from

and the final decree depend for their validity on the interlocutory decree, which we are now reversing, necessitate their reversal as well.

The interlocutory decree, the final decree and the several orders appealed from are all reversed, with directions to the trial court to sustain appellant's demurrer to the complaint with leave to respondent to amend.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied June 28, 1945, and respondent's petition for a hearing by the Supreme Court was denied July 26, 1945. Carter, J., and Schauer, J., voted for a hearing.