[Civ. No. 16363.   Second Dist., Div. Three.   Dec. 1, 1948.]

JOE McQUIN, Appellant, v. MARTHA LEE RICE, as Executrix, etc., et al., Respondents.

Allan L. Leonard for Appellant.

L. G. Hayford for Respondents.

VALLÉE, J.—Plaintiff appeals from a minute order granting the defendant's motion for a judgment of nonsuit at the close of plaintiff's case in an action in equity against the answering defendant, Martha Lee Rice, as executrix of the estate of Henrietta Clemons, deceased, to establish, after the death of the alleged trustee, a resulting trust in an undivided one-half interest in a parcel of improved real estate.

The gist of plaintiff's action is found in the allegation of the complaint that plaintiff and the deceased, Henrietta Clemons, while living together as husband and wife between the years 1938 and 1945, acquired through their joint efforts a certain parcel of real property in Los Angeles, which was conveyed to Henrietta Clemons "solely for the convenience of the plaintiff and said Henrietta Clemons, and not for any other reason, it being understood and agreed between plaintiff and said Henrietta Clemons at the time of the execution and recordation of said deed and at all times thereafter that said real property should be held in said Henrietta Clemons' name, but as a tenancy in common between plaintiff and said Henrietta Clemons." The complaint prays that plaintiff be decreed the owner of an undivided one-half interest as tenant

in common in the real property, quieting the title in plaintiff to the undivided one-half interest, and for partition and sale.

The case went to trial upon the theory that by the foregoing allegation plaintiff had stated a cause of action for a resulting trust. At the close of plaintiff's case the court granted defendant's motion for judgment of nonsuit.

The sole question presented here is whether there is any evidence which required the denial of the motion for a judgment of nonsuit.

The facts established by plaintiff's evidence are: Plaintiff and Mrs. Henrietta Clemons, deceased, a widow, lived together in Los Angeles as husband and wife, without benefit of a marriage ceremony, from the year 1940, until 1945, the year of Mrs. Clemons' death. During this period both parties were employed. There is, however, nothing in the record indicating the nature of plaintiff's employment, the place where he worked, or the amount of his earnings. The deceased was likewise employed steadily during this period until about a year before her death, when she became ill and was unable to continue working. There is nothing in the record to indicate the amount of her earnings from her employment. During the time the parties lived together meretriciously and up until Mrs. Clemons' death, plaintiff testified that he turned over his salary or "practically all of it" to Mrs. Clemons with which "to pay bills, to take care of the bills. . . . She was paying on the house and things," and that she always "showed him the receipts and things that she paid the bills." In the latter part of 1943, Mrs. Clemons negotiated for the purchase of a house and lot, the subject of this action, and an escrow was opened. The record does not indicate the purchase price of the property. One of plaintiff's witnesses testified that she thought Mrs. Clemons paid $600 down on the property. Title was taken in the name of "Henrietta H. Clemons, a widow." As such, she executed a trust deed to the Security First National Bank of Los Angeles, to secure an indebtedness of $3,400. Both of these documents were recorded on October 2, 1943. The monthly payments on the property thereafter were $50 a month. Plaintiff testified that at the time the property went into escrow, it was agreed that it was to be owned "as man and wife."

Throughout the trial, as the following examples show, plaintiff's testimony was uncertain, ambiguous and at times unintelligible: "Q. . . . : Now, what if anything did you pay into that escrow in connection with this purchase? . . .

A. I don't know exactly what I paid, but I gave her around $50 or $60 at a time . . . I have been giving her money all the time to pay in, see . . . Q. . . . How much did you pay in altogether on this property, if you know? A. Well, I couldn't add it all up. I think around a thousand and some dollars altogether . . . Q. Can you tell the Court how many months you made payments, 20 months, 24 months—— A. Oh, I don't know. As near as I can come to it, it ought to be around—she died in 1946. That should be— I paid when it was bought.'' Again on cross-examination: ''Q. When was it first called to your attention that she was buying a piece of property? A. Oh, all along. She bought— well, in '44, when she was telling me about it. Q. In '44? A. In '43 and '44. Q. Just give us, if you can, the exact date when you first knew that the piece of property was being purchased? A. No, I don't—I really don't know. Q. To the best of your recollection what would you say? A. Well, I will tell you. I don't know. I just can't think of what time it was at all, the date.''

■ To charge a resulting trust upon any specific property it must be shown that trust funds went into the purchase of the property (*Taylor* v. *Morris,* 163 Cal. 717, 724 [127 P. 66]), and where two persons allegedly contribute money to the purchase of land, the title to which is taken in the name of one of them pursuant to an oral agreement, the resulting trust comes, not from the agreement, but from the facts shown as to the amount of purchase price advanced by each. (*Pavlovich* v. *Pavlovich,* 22 Cal.App. 500, 506 [135 P. 303].) ■ The party claiming the benefit of the trust must show that the money was paid before or at the time of the execution of the conveyance and as part of the original transaction of purchase. (*Hellman* v. *Messmer,* 75 Cal. 166, 169-170 [16 P. 766]; *Lincoln* v. *Chamberlain,* 61 Cal.App. 399, 401 [214 P. 1013]; *Bradley* v. *Duty,* 73 Cal.App.2d 522, 526 [166 P.2d 914]; cf. *Kirk White & Co.* v. *Bieg-Hoffine Co.,* 6 Cal. App.2d 188, 191-192 [44 P.2d 439].) ■ Where it is impossible definitely to establish the proportion of the purchase price contributed by the person in whose behalf the existence of the trust is asserted, a resulting trust will not be declared. (*Woodside* v. *Hewel,* 109 Cal. 481, 486 [42 P. 152]; *Plass* v. *Plass,* 122 Cal. 3, 13 [54 P. 372]; *Breitenbucher* v. *Oppenheim,* 160 Cal. 98, 104 [116 P. 55].) ■ Contributions of funds to enable a purchaser to complete installment payments on the purchase price of, or to make improvements on, real property after title has been acquired by another do

not raise a resulting trust. (*Hellman* v. *Messmer,* 75 Cal. 166, 170 [16 P. 766] ; *Neusted* v. *Skernswell,* 69 Cal.App.2d 361, 368 [159 P.2d 49] ; *Dimity* v. *Dixon,* 74 Cal.App. 714, 722 [241 P. 905] ; *Lincoln* v. *Chamberlain,* 61 Cal.App. 399, 401 [214 P. 1013] ; 2 Rest., Trusts, 454, com. o, pp. 1385-1386.)

A person in whose name the legal title to land is vested is presumed to be the absolute owner thereof ; and one who claims a resulting trust in the land must establish by clear, convincing and unambiguous testimony the precise amount or proportion of the consideration furnished by him as well as the amount for which the purchase was made in order that the court may determine the respective rights of the parties in the property purchased ; otherwise the legal title will prevail. (*Woodside* v. *Hewel,* 109 Cal. 481, 484 [42 P. 152] ; *Plass* v. *Plass,* 122 Cal. 3, 13 [54 P. 372] ; *Moulton* v. *Moulton,* 182 Cal. 185, 190 [187 P. 421].)

With these principles in mind it must be held that there was a complete failure of proof on the part of the plaintiff to show a valid resulting trust, and the court, therefore, did not err in granting the nonsuit. No specific amount of money from plaintiff's paychecks, or any other source, was proved to have been contributed toward the purchase price of the property. None of the money turned over to the deceased from plaintiff's paychecks was traced as having been paid as part of the purchase price of the property. There is no evidence that any money belonging to plaintiff was ever invested in the property. All that the evidence shows is that plaintiff turned over his salary, without stating the amount, to deceased and that she paid the ''bills.'' In the absence of evidence to the contrary, it must be assumed that plaintiff's labor and contributions from his paychecks were intended as payments for his share of the living expenses or as gifts. (*Baskett* v. *Crook,* 86 Cal.App.2d 355, 359 [195 P.2d 39].)

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.