In re FERGUSSON DRUG CO., Inc.
No. 19385.

District Court, E. D. Pennsylvania.
April 27, 1937.

In this case there has been brought before us for review the order of the referee granting the petition of Jerome L. Markovitz to direct the trustee of the bankrupt to pay over to him the cash received from the accounts receivable of the bankrupt; the petitioner's claim being based upon the contention that said accounts had been assigned to him.

It appears that in 1934 Victor S. Markovitz, brother of Jerome L. Markovitz and son of Regina Markovitz, entered into an agreement to purchase from the A. C. Fergusson Company 55 per cent. of the capital stock of the bankrupt company and its obligation held by the A. C. Fergusson Company in the sum of $18,146.55. The consideration was the sum of $5,000, of which $2,500 was paid in cash. The remaining $2,500 was never paid. The agreement provided that in case of default in the payment of the balance of $2,500 the right to the $18,146.55 claimed should revert to the A. C. Fergusson Company. After the purchase Victor S. Markovitz became treasurer of the bankrupt company and in effect its general manager. The bankrupt company was insolvent at the time of this purchase and continued insolvent down to the date of bankruptcy.

Some time after the purchase by Victor S. Markovitz of the controlling interest in the bankrupt company, it found itself short of funds necessary for operation. Victor S. Markovitz thereupon requested his mother, Regina Markovitz, and his brother, Jerome L. Markovitz, to advance moneys for the current purposes of the business. Jerome L. Markovitz is a lawyer. After a consideration of the matter he agreed that he and his mother would advance moneys for the purposes of the business upon being secured by an assignment of the bankrupt's accounts receivable. The board of directors of the bankrupt company thereafter on December 8, 1934, passed a resolution authorizing the treasurer to borrow money upon the security of the accounts receivable and to execute notes and assignments. Following the passage of this resolution and prior to the advancement of any money, Victor S. Markovitz as treasurer executed an assignment of the bankrupt's accounts receivable to Jerome L. Markovitz. The assignment was in writing. It was not produced in evidence, the testimony being that it had been lost. Evidence as to its contents was presented, however, and the referee found as a fact that it had been given. This finding we

Levi, Mandel & Miller, of Philadelphia, Pa., for trustee.

Joseph S. Kleinbard and Edward S. Weyl, both of Philadelphia, Pa., for petitioner.

MARIS, District Judge.

accept since there is substantial evidence to support it.

Thereafter Jerome L. Markovitz advanced to the bankrupt company sums totaling $10,878.90. Repayments were made on account of these loans so that at the time of bankruptcy but $4,228.66 remained unpaid. Certain advances were also made by Regina Markovitz. No notes or other evidences of indebtedness were ever given by the bankrupt company to either of them. It is admitted that no written assignment of accounts receivable was given to Regina Markovitz, and her claim as assignee of the accounts does not appear to have been pressed. During the period of these advances the bankrupt's accounts receivable covered by the assignment amounted to $50,-000.

No notice of the assignment of the accounts was given to the bankrupt's creditors prior to bankruptcy. Jerome L. Markovitz made no effort to collect the accounts assigned to him but intrusted this entirely to the bankrupt company. The manner in which the sums collected on the assigned accounts, as well as the other funds of the bankrupt company, were handled is described by the referee in his findings of fact, as follows:

"The bankrupt had a bank account in the Corn Exchange National Bank. On the alleged reason that the opening of a second account, to the use of the petitioners, as assignee, would involve an expense, all moneys collected by the bankrupt from the accounts receivable were deposited in the sole account of the bankrupt, with the consent of the assignees. Into this account were deposited certain further moneys of the bankrupt coming into its hands from cash sales, amounting, according to the testimony of Victor Markovitz (page 9), to about $100.00 a month. These moneys were not assigned. Withdrawals from this total bank deposit were made, not only to the petitioners, but also in payment of certain other obligations of the debtor. The withdrawals to the petitioners in repayment of advances were never made in the sum of the proceeds of an account receivable, or in a sum being the aggregate of the proceeds of certain accounts receivable, but in lump sums, which had no exact reference to specific moneys already collected. Further no list of the accounts assigned was ever delivered to the assignees. Nor was it agreed that there should be a substitution of accounts receivable for moneys withdrawn from the fund in liquidation of other obligations of the bankrupt. With reference to the matter of substitution the position of the petitioners is substantially that none of the proceeds of the assigned accounts was ever used by the bankrupt for other purposes. The exact facts pertaining to this situation do not appear from the testimony, the testimony of Victor Markovitz being only to the effect that the payments into the fund from cash sales aggregated about $100.00 a month. In addition it is to be noted that a memorandum of the assignment of the accounts receivable was made on the books of the Company only in cases where the accounts were in a substantial amount; where the accounts were small in amount, there was no notation. On the margin of the account showing the loans made by Jerome Markovitz, there was a notation: 'Secured by all accounts receivable.'"

To this statement it need only be added that all the funds of the bankrupt company, including the sums borrowed from the petitioners which aggregated in a year and a half over $12,000, passed through the same bank account in which the moneys collected from the accounts receivable were deposited. Victor S. Markovitz as treasurer of the bankrupt company had the sole right to draw checks on this account, and he withdrew moneys from the account, not only to replace the advances of the petitioners, but also to pay the other expenses and obligations of the bankrupt company. In view of the fact that the accounts receivable aggregated $50,000 and the amount repaid on the loans was less than $8,000, it seems clear that a large portion of the sums collected on the accounts was used for the company's general expenses. Furthermore, the repayments which were made on the loans were in lump sums not corresponding to any specific collections. This course of procedure was carried on with the consent of Jerome L. Markovitz, who did not insist that the proceeds of the accounts receivable be segregated in a separate bank account. The evidence indicated that Jerome L. Markovitz nevertheless sought to delegate the bankrupt company as his agent to collect the assigned accounts and to pay over the proceeds thereof to him in repayment of his loans. On these facts the referee concluded that Victor S. Markovitz was the agent of his brother in the collection and disbursement of the accounts receivable and held that the bankrupt company had not

been permitted to remain in unfettered control of them. He accordingly allowed the claim of Jerome L. Markovitz to the proceeds of the accounts remaining in the trustee's hands. We are thus brought to a consideration of the legal principles which are applicable to these facts.

The Supreme Court in Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, definitely held that under the law of New York an assignment of accounts receivable is void as against the assignor's trustee in bankruptcy if the assignor reserves dominion over the accounts inconsistent with the effective disposition of title by the assignee. Since this case arose in New York, it was decided under the law of that state. The law of Pennsylvania has always been equally hostile to secret liens, the statute of 13 Elizabeth, c. 5 (Rob.Dig. 295), having been in force here since the founding of the colony. We, therefore, agree with the conclusion of the referee that the principle laid down in Benedict v. Ratner is the law of Pennsylvania as well. That case recognizes, however, that it is only where unrestricted dominion over assigned accounts and their proceeds is reserved by the assignor that the assignment is void. If there is an agreement that the assignor of accounts receivable shall collect them and pay the proceeds to the assignee, the assignment is not invalid. White v. Platt, 5 Denio (N.Y.) 269; Clark v. Iselin, 21 Wall. 360, 368, 22 L.Ed. 568; Young v. Upson (C.C.) 115 F. 192; Benedict v. Ratner, supra.

An examination of these cases shows the basis for this rule. It was well stated by the Supreme Court in Clark v. Iselin, supra, in referring to the rule laid down in White v. Platt, supra (a case relating to pledged promissory notes), as follows: "Where promissory notes are pledged by a debtor to secure a debt, the pledgee acquires a special property in them. That property is not lost by their being redelivered to the pledgor to enable him to collect them, the principal debt being still unpaid. Money which he may collect upon them is the specific property of the creditor. It is deemed collected by the debtor in a fiduciary capacity." As applied to assigned accounts receivable, the rule is that when the assignor is specially authorized to collect the accounts for the assignee, the relation of principal and agent arises, and the proceeds of the accounts so collected are the property of the assignee in the hands of the assignor who is required as agent to keep them separate and distinct from his own funds belonging to the assignee. This agency relationship undoubtedly continues so long as the funds are kept segregated, and it will continue even if there is an intermingling of the funds by the agent with his own funds, provided it is unauthorized or tortious. In the latter case the whole commingled fund will be treated as trust property belonging to the principal, except in so far as the agent may be able to distinguish what is his. 3 C.J.S., Agency, § 164; Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U.S. 54, 26 L.Ed. 693.

If, however, the funds belonging to the principal are intermingled by the agent with his own funds with the knowledge and consent of the principal, the fiduciary relationship of principal and agent is terminated and the ordinary relation of debtor and creditor takes its place. Marine Bank v. Fulton County Bank, 2 Wall. 252, 17 L.Ed. 785; General Baking Co. v. Gordon (D.C.) 9 F.Supp. 210.

In Marine Bank v. Fulton County Bank, supra, the principle is clearly stated. In that case a New York bank had sent to a Chicago bank certain notes for collection. The notes were collected in state currency then somewhat depreciated. About a year later when settlement was to be made with the forwarding bank, this currency had depreciated to less than 50 per cent. of par. The Chicago bank nevertheless offered to settle in the depreciated currency which the New York bank refused demanding the value of the currency in coin at the time the notes were collected. It recovered judgment for this amount, which judgment the Supreme Court affirmed. Mr. Justice Miller said (2 Wall. 252, at page 254, 17 L.Ed. 785): "The Chicago bank was unquestionably the agent of the Fulton County Bank, up to and including the receipt of the money from the makers of the notes. If no change was made in their relation subsequent to that time, then the former bank, having obeyed instructions, should not be held liable to the latter for the depreciation of its money." The court pointed out that upon receiving the money the Chicago bank could have locked it up in its safe until called for, thus discharging its whole duty as agent. Instead, however, the money was deposited with its other funds and used by it in its business. As to this the court said

(2 Wall. 252, at pages 256, 257 and 258, 17 L.Ed. 785):

"The counsel·have argued as to the effect of mixing the money of plaintiff with that of defendant. In the view we take of the matter, there was no such admixture. It being understood between the parties that, when the money was received, it was to be held as an ordinary bank deposit, it became by virtue of that understanding the money of the defendant the moment it was received. * * *

"If we are correct in these views, it would seem that the relation of principal and agent was changed the moment the money received was placed in the general fund of the bank, and the plaintiff credited on its book with the amount. * * *

"If the Marine Bank had thus received depreciated money, and kept it without using it until called. for, or had sent it by express to plaintiff, it would have been relieved from further liability. In other words, as long as the defendant retained strictly the character of agent, and acted within the principle laid down in the circular, it was protected. But, as we have already shown, the defendant changed that relation by using the money as its own, and became the debtor of the plaintiff for the sum collected."

■■ When the principle of Marine Bank v. Fulton County Bank, supra, is applied to the present situation, it comes down to this: If funds received by an agent for the account of its principal are with its principal's consent commingled with the agent's own funds so as to change the relationship ·to that of debtor and creditor, the result is that the commingled fund is the agent's property, since the latter no longer is required to pay over a specific fund but merely the amount for which it has become indebted. It follows that the agent must be held to have that "unfettered use" of the funds collected from the assigned accounts which renders the assignment void as to its trustee in bankruptcy under the rule of Benedict v. Ratner, supra. The fact that the assignee who has permitted the commingling of the funds essays to lay verbal restrictions upon the assignor's disposition thereof cannot change the legal relationship between the parties or serve to raise a trust or create an equitable lien in any portion of the commingled fund. Such restrictions, if agreed to, may give rise to an action for damages if violated, but they cannot create a property right in an unsegregated portion of the assignor's funds which would prevent the latter from effectively disposing of title thereto. As Mr. Justice Holmes said in National City Bank v. Hotchkiss, 231 U.S. 50, at page 57, 34 S.Ct. 20, 21, 58 L.Ed. 115, a case involving similar questions: "A trust cannot be. established in an aliquot share of a man's whole property, as distinguished from a particular fund, by showing that trust moneys have gone into it. On similar principles a lien cannot be asserted upon a fund in a borrower's hands, which, at an earlier stage, might have been subject to it, if, by consent of the claimant, it has become a part of the borrower's general estate. But that was the result of the dealings between these parties, and it cannot be done away with by a wish or intention, if such there was, that alongside of this permitted freedom of dealing on the part of the bankrupts, the security of the bank should persist. It is not like the case of property wrongfully mingled with general funds and afterwards traced." It will be seen that this language is peculiarly applicable to the present case. Equally pertinent is the following statement of Mr. Justice Werner in Lighthouse v. Third National Bank, 162 N.Y. 336, 344, 345, 56 N.E. 738, 741, quoted with approval in Re Finkelstein (C.C.A.) 298 F. 11, 17, by Circuit Judge Mayer: "One of the first essentials to the creation of an equitable lien is the ·specific thing or property to which it is to attach. 'Though possession is not necessary to the existence of an equitable lien, it is necessary that the property or funds upon which the lien is claimed should be distinctly traced, so that the very thing which. is subject to the special charge may be proceeded against in an equitable action and sold under ·decree to satisfy the charge.' Jones, Liens, § 34, and Grinnell Minturn & Co. v. Suydam, 3 Sandf.[5 N.Y.Super. Ct.] 132."

■■ These cases make it clear that the law will not permit one by a secret agreement with his agent to retain his property in funds which he has permitted to be so mingled with those of his agent as to make them subject to the demands of the latter's creditors. To hold otherwise would, we think, open wide the door for fraud against creditors of the agent. This is particularly so in a case like the present where the parties are closely related by blood. Especially in such cases should there be ·full compliance with the requirements which the

law has laid down. Nor can the fact that the principal is a lawyer excuse him from such full compliance.

From what has been said it is clear that the true criterion to be applied in this case is whether the proceeds of the assigned accounts which the assignor had been authorized to collect were kept segregated for the benefit of the assignee. If they were the assignment is valid. If, however, they were, with the assignee's consent, commingled with the assignor's other funds, the assignee's property in the fund is gone and the assignment is void as against the assignor's trustee in bankruptcy.

Turning to the facts of the present case, we observe that Jerome L. Markovitz in authorizing the bankrupt company to collect the accounts for him asked that the proceeds be segregated. Nevertheless, at the request of the treasurer of the bankrupt he agreed that the proceeds might be deposited in the bankrupt's sole bank account and commingled with its other funds. Applying the above criterion to these facts, we must necessarily hold that at the moment he permitted the commingling of his funds with those of the bankrupt he lost his special property therein and his relationship with the bankrupt as to them became merely that of creditor and debtor. The agreement of the parties that the treasurer of the company should act as his agent in disbursing this portion of the company's funds could have no legal effect to protect his claim. It was, as Mr. Justice Holmes said in National City Bank v. Hotchkiss, supra, merely the expression of a "wish or intention" which could not do away with the legal effect of the commingling of the funds which he approved. It necessarily follows that the rule laid down in Benedict v. Ratner should have been applied to this case and the claim of Jerome L. Markovitz dismissed.

We have not overlooked the cases of Chapman v. Emerson (C.C.A.) 8 F.(2d) 353, and Petition of Post (C.C.A.) 17 F.(2d) 555, relied on by the referee. In the latter case the Circuit Court of Appeals for the First Circuit held that Benedict v. Ratner was not applicable because of the differences between the law of Massachusetts and that of New York. That case is, therefore, not controlling here, since, as we have indicated, the law of Pennsylvania upon this subject is substantially the same as that of New York.

Chapman v. Emerson, supra, decided by the Circuit Court of Appeals for the Fourth Circuit, would seem to sustain the assignee's position in this case, although the facts of that case are not very fully stated in the opinion. However, its authority is very doubtful, since, as the same court pointed out in Union Trust Co. v. Peck, 16 F.(2d) 986, it is on the extreme border line and is not to be extended. Furthermore, an examination of Judge Rose's opinion in that case shows that the court did not consider the legal principles which we have discussed in this opinion and which seem to us to be controlling. To the extent that Chapman v. Emerson holds that a principal may retain property in a fund which he has permitted his agent to commingle with his own funds we believe that it is in conflict with Benedict v. Ratner and we, therefore, do not deem it to be controlling authority here.

The petition for review is sustained, the order of the referee is reversed, and the petition of Jerome L. Markovitz for an order on the trustee to pay over to him the cash received from the accounts receivable of the bankrupt is dismissed.