Beverly Farms, Inc., v. Olson Farms, Inc.

*William S. Marshall, Griggs, Moreland, Blair & Douglass* and *Murrin & Murrin,* for plaintiff.

*William J. Rockenstein, Brandon, Millar, Rockenstein & MacFarlane,* for John J. Boyle.

*Richard B. Kirkpatrick,* for the receiver.

SHUMAKER, P. J., March 30, 1955. — This is an equity proceedings in which plaintiff seeks to impose a trust upon certain funds in possession of defendants on the theory that said moneys were collected by defendants in a fiduciary capacity for plaintiff and wrongfully withheld by said defendants.

A receiver in equity has, since the filing of this action, been substituted for defendant Olson Farms, Inc.

From a practical point of view, the question is whether moneys collected by defendants for plaintiff constitute a trust entitling plaintiff to preference in the distribution of the assets of defendant Olson Farms, Inc., now in receivership, or whether plaintiff is but a common or general creditor of said corporate defendant and entitled only to participate in the distribution to be made by the receiver on a prorata basis after preferred claims under law are first paid. The amount claimed is $16,036.07.

Not intended as findings of fact but merely as statement by way of explanation of this opinion, the matter in controversy arose when defendant Olson Farms, Inc., on December 1, 1951, sold for valuable consideration to the plaintiff Beverly Farms, Inc., certain milk and dairy products routes and customers in Allegheny County, both of these companies being engaged in the milk and dairy products business.

Two of the customers involved in the transaction were the City of Pittsburgh for the Highland Park Zoo and the County of Allegheny for Mayview Home and Hospital.

After the contract, above mentioned, was entered into by these dairies, Beverly Farms, Inc., undertook to supply said customers with its products but was later informed by the said customers that since Olson Farms, Inc., had obtained the customers by being the lowest bidder and that such contracts could not be transferred, sublet or assigned, the municipalities could not pay Beverly Farms, Inc., on the latter's billings.

An arrangement was thereafter worked out, satisfactory to all parties involved, that Beverly Farms, Inc., should continue its service but the billings would be made on Olson Farms, Inc., stationery or billheads, the customers would make payment to Olson Farms, Inc., which, in turn, would pay over to plaintiff, Beverly Farms, Inc., the moneys so collected.

In the contract for the purchase of said part of the Olson business by plaintiff, it was agreed in writing that John L. Boyle, president of Olson Farms, Inc., would be employed by plaintiff for a period of six months, beginning January 1, 1952, at a fixed salary.

Boyle received the checks for the dairy products delivered by Beverly Farms, Inc., to Mayview and the zoo, endorsed some checks directly over to plaintiff but deposited certain other checks so received in Olson Farms account in the Butler branch of the Mellon National Bank and Trust Company, and for some time paid the money so received to plaintiff by checks drawn on the Olson Farms, Inc., account in said bank.

Sometime later, however, plaintiff discovered that money had been paid on the zoo and Mayview accounts to defendants, the amount involved in this litigation, which was retained by defendants and not paid over to plaintiff under the above mentioned arrangement.

The question involved here becomes more complicated by the fact that defendant Olson Farms, Inc., is now in receivership, and the opinion and decree here

being written is of special significance and importance, for if defendants were in fact trustees for plaintiff of the collections made and retained on these two accounts, then plaintiff recovers in full and the creditors and stockholders of the corporate defendant participate in the distribution of the balance of the liquidated assets in the hands of the receiver. If, however, no such trust is impressed on the funds held by said receiver, then plaintiff appears in the role of a common or general creditor in looking to the assets of the insolvent corporate defendant and will participate in the distribution to be made by the receiver on a percentage basis and the other creditors will accordingly be benefited.

Defendants assign as their reason for refusing to make settlement with plaintiff that plaintiff is indebted to defendants in another transaction between them which is a set-off against plaintiff's claim here asserted.

We turn now to the procedural status of the case:

The bill of complaint filed May 20, 1953, set forth with particularity the claim of plaintiff as summarized above and prayed for a decree that the amount in controversy is held by defendants, or either of them, as trustees for plaintiff and is not an asset of the Olson Farms, Inc., an injunction enjoining said defendant from paying its creditors or stockholders until plaintiff had been paid in full, an order directing defendants to pay said sum to plaintiff and for such other relief as the court may deem proper.

On May 18, 1953, the Hon. William B. Purvis, then sitting as chancellor, issued a preliminary injunction, restraining the Olson Farms, Inc., from paying its creditors and/or stockholders in dissolution or otherwise until plaintiff had been paid and enjoining said defendant from selling, assigning or transferring any

of its assets not for sale in the regular course of business, set the injunction bond required at $500 and set May 25, 1953, at 10 a.m., as the time for hearing in the matter. The preliminary injunction was supported by proper affidavits, proper service of the proceedings was made on defendants and required bond was posted.

On May 25, 1953, on motion of all the attorneys involved in this case, Judge Purvis continued the injunction and the hearing until June 29, 1953.

On June 4, 1953, defendant, Olson Farms, Inc., was put into receivership by this court and Richard B. Kirkpatrick was duly appointed and qualified as receiver, all at equity no. 2, September term, 1953.

On June 26, 1953, defendants, with joinder of the receiver, filed preliminary objections to the bill on the ground that upon the facts averred plaintiff had a full, complete and adequate remedy at law.

On August 26, 1953, the preliminary objections were overruled and dismissed and defendants were directed to answer.

Answer to the bill of complaint was filed by the receiver on September 11, 1953, and in behalf of the individual defendant on October 19, 1953.

The hearing on the merits began April 6, 1954, and there being so many amendments to the pleadings filed, counsel for plaintiff were directed to file an amended complaint to include all amendments allowed by the court, which was done on June 9, 1954. The court also requested counsel to submit suggested findings of fact and conclusions of law, the last of which was filed on November 3, 1954.

## Findings of Fact

From the testimony taken at the hearings in this case and from the admitted or undenied averments

in the bill of complaint as amended, the court makes the following findings of fact:

1. That Beverly Farms, Inc., was and is engaged in the milk and dairy products business in Allegheny County, and prior to December 1, 1951, was in the wholesale distribution of such items.

2. That prior to December 1, 1951, the Olson Farms, Inc., was engaged in the milk and dairy products wholesale and retail business, principally in Butler County but with certain trade routes, assets and business in the City of Pittsburgh and Allegheny County.

3. On December 1, 1951, the Beverly Farms, Inc., entered into a written agreement with Olson Farms, Inc., whereby the former purchased from the latter for the sum and price of $101,126.40 assets of Olson Farms, Inc., in Allegheny County, including certain trade routes and customers there, which consideration was paid in full.

4. Included among the customers so acquired by Beverly Farms, Inc., was the City of Pittsburgh for milk and dairy products to be delivered to the Highland Park Zoo and also the County of Allegheny for deliveries of such products to the Mayview Home, operated by the Allegheny County Institutional District.

5. That Olson Farms, Inc., had obtained said two customers by being the lowest bidder for said business and had entered into written contracts with said municipalities concerning the sale and delivery of its milk and dairy products, copies of which contracts are attached to the bill of complaint.

6. That at the time of the agreement between Beverly Farms, Inc., and Olson Farms, Inc., John L. Boyle was the president and principal stockholder of Olson Farms, Inc.

7. By the agreement of December 1, 1951, said John L. Boyle agreed to work for the Beverly Farms, Inc.,

for a period of six months beginning January 1, 1952, and did comply with the terms of the contract in this regard for said term which ended June 30, 1952.

8. After the agreement between the dairy companies on December 1, 1951, the Beverly Farms, Inc., delivered its own products to the Highland Zoo and the Mayview Home, billing the municipalities for the same on its own billheads.

9. That some months thereafter, the Beverly Farms, Inc., received notice from certain agents of the City of Pittsburgh and the County of Allegheny that the contracts for the milk and dairy products to be delivered to the zoo and the home had been let on the lowest bidder basis and that said contracts could not be assigned, sublet or transferred to Beverly Farms, Inc.

10. Orally, arrangements were made, satisfactory to all concerned, that Beverly Farms, Inc., should continue to furnish its products to said institutions, but would bill the municipalities on the letterhead or stationery of Olson Farms, Inc., that payments would then be made on checks or drafts drawn by the proper authorities for such municipalities payable to the order of Olson Farms, Inc., and that Olson Farms, Inc., would in turn pay over to Beverly Farms, Inc., the money so received on said two accounts.

11. That for several months thereafter this arrangement was carried out and Beverly Farms, Inc., was so paid for its claims against the City of Pittsburgh and the County of Allegheny.

12. That Olson Farms, Inc., paid over said moneys due Beverly Farms, Inc., on occasions by endorsement of the drafts and delivery of them to Beverly Farms, Inc., and on other occasions by depositing the drafts or checks in the Olson Farms, Inc., account in the Mellon National Bank and Trust Company at its Butler branch, then drawing a draft or check on said account

payable to the order of Beverly Farms, Inc., and delivering the same.

13. There was received by defendants and deposited in the Olson Farms, Inc., account in the Mellon National Bank and Trust Company the sum of $16,036.07, being $15,929.47 received by defendants from the Allegheny County Institutional District for products delivered to it by Beverly Farms, Inc., in the months of September, October, November and December, 1952, paid by the municipality's voucher no. 1109, dated November 10, 1952, in the amount of $3,836.25, voucher no. 182, dated February 10, 1953, in the amount of $3,963.74, voucher no. 88, dated January 27, 1953, in the amount of $4,003.38, voucher no. 154, dated February 3, 1953, in the amount of $4,126.10, and also includes the sum of $106.60 received by defendants from the City of Pittsburgh for products delivered to the Highland Park Zoo by Beverly Farms, Inc., in February, 1952.

14. That the sum of $16,036.07 was not paid by Olson Farms, Inc., to Beverly Farms, Inc., and still remains due and unpaid.

15. That the Olson Farms, Inc., has a claim against Beverly Farms, Inc., not reduced to judgment with the amount and liability of Beverly Farms, Inc., not definitely determined, which claim is in dispute.

16. That Beverly Farms, Inc., knew and had reason to know that defendants were depositing checks received from Allegheny County and the City of Pittsburgh in the Olson Farms, Inc., account in the Mellon Bank and making payment over to Beverly Farms, Inc., on Olson Farms, Inc., checks drawn on this account.

17. That John L. Boyle, individually or as president of Olson Farms, Inc., personally kept no part of the moneys involved in this controversy and received no

direct benefit from depositing the sums collected for Beverly Farms, Inc., in the Olson Farms account, other than possibly as a stockholder of Olson Farms, Inc.

### Conclusions of Law

Based on the facts above found, and the law applicable thereto, this court enters the following conclusions of law:

1. The claim of Beverly Farms, Inc., is not barred by "unclean hands" doctrine of equity, in spite of the fact that the oral arrangement which has resulted in the parties being before this court was for the purpose of circumventing the nonassignability of the contracts between the City of Pittsburgh and the County of Allegheny and Olson Farms, Inc., since said arrangement was with full knowledge, consent and approval of all concerned.

2. Defendants were collection agents for Beverly Farms, Inc., in collecting the money due from the City of Pittsburgh and the County of Allegheny for services and products furnished said municipalities by said Beverly Farms, Inc.

3. Upon receipt of such moneys due Beverly Farms, Inc., defendants, having no interest in such funds, were trustees thereof for Beverly Farms, Inc.

4. That defendants did not act tortiously nor was there any fraud perpetrated by defendants upon plaintiff.

5. Defendants commingled the trust funds due the cestui que trust, Beverly Farms, Inc., with the general funds of Olson Farms, Inc., deposited in the Mellon National Bank and Trust Company.

6. The trust funds commingled with the trustees' own money lost their identity as trust funds.

7. No implied or constructive trust attached to the commingled fund for the reason that the cestui que trust had knowledge that the commingling of the funds

was occurring and had reason to know such was the case.

8. Because of the knowledge of plaintiff of the commingling of the trust funds with other funds of the trustee, a creditor-debtor relationship now exists between Beverly Farms, Inc., and Olson Farms, Inc., with respect to the funds in said account of Olson Farms, Inc., now in the hands of the receiver for the insolvent Olson Farms, Inc.

9. In depositing the money from the City of Pittsburgh and the County of Allegheny due Beverly Farms, Inc., in the Olson Farms account in the Mellon Bank, John L. Boyle was not acting in an individual capacity but rather as an officer of Olson Farms, Inc., and, therefore, no actual implied or constructive trust can be impressed upon him or any of his individual property.

10. John L. Boyle is not liable as president of the Olson Farms, Inc., for depositing the trust funds of Beverly Farms, Inc., in the Olson Farms account in the Mellon Bank, as an officer of a corporation is not liable for the corporate acts and debts of the corporation in the absence of elements not involved in this case.

11. That the claim in dispute of Olson Farms, Inc., against Beverly Farms, Inc., is not properly before this court for adjudication and is therefore not judicially determined in this action.

### Discussion

We now discuss the reasons of this court for several of the above stated conclusions of law and the authority in support of the same.

We do not in this case have the benefit of an appellate court decision in Pennsylvania involving a set of facts similar to those in this case.

The money involved in this action was due and owing to plaintiff, Beverly Farms, Inc., from its

customers obtained through the purchase of certain trade routes from Olson Farms, Inc., and would have been paid directly to plaintiff for its services and products furnished but for the objection that the municipalities could not make payment to Beverly Farms, Inc., on the contracts entered into with Olson Farms, Inc.

Having sold said routes and customers to plaintiff for valuable consideration received, Olson Farms, Inc., undertook to receive the money from the customers involved and in turn pay it over to plaintiff.

As stated by Chief Justice Cardozo in Beatty v. Guggenheim Exploration Company, 225 N. Y. 380, 386, 122 N. E. 378:

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

As stated in 4 Scott on Trusts, sec. 462, page 3103:

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. When a person holds the title to property which he is under an obligation to convey to another, and when that obligation does not arise merely because he has voluntarily assumed it, he is said to hold the property in constructive trust for the other and he is called a constructive trustee of the property. He is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee."

And at section 462.1, p. 3106, the same author states:

". . . a constructive trust is not based upon the intention of the parties, but is imposed in order to prevent unjust enrichment."

According to Restatement, Restitution, §160:

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

And on page 643 of said Restatement of the Law, it is stated:

"In most cases where a constructive trust is imposed the result is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant. . . ."

In the case of Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, a debtor-pledgor retained certain stock dividends after pledging the stock as collateral. The court held that defendant's retention of such shares of stock was a breach of an implied trust on her part, and that it became her duty "in good morals and in conformity with the canons of square dealing", to turn the certificate evidencing her increased holdings over to the pledgee and that an implied trust arose out of such situation. Quoting other authorities, the court held: " 'Implied trusts arise by implication of law because morality, justice, conscience and fair dealing demand that the relation be established.' "

There is no doubt in the mind of this court that a trust was imposed on the funds collected by Olson Farms, Inc., for the use and benefit of Beverly Farms, Inc.

We would have no difficulty in granting to plaintiff the equitable relief requested in the complaint as amended if the trust funds were in specie, that is, if there existed an ear-marked fund upon which this

court could impress a trust, identifying the fund as trust property in kind.

Referring again to the Restatement of the Law of Restitution, page 645:

"f. *Specific enforcement where constructive trustee is insolvent.* Where property is held by one person on a constructive trust for another, and the constructive trustee is insolvent, the other is entitled to recover the property in specie. The equitable interest of the beneficiary in the property will be protected if the rights of bona fide purchasers do not intervene. The creditors of the constructive trustee are not bona fide purchasers (see §173, Comment j), and take subject to the rights of the beneficiary, not only in cases where the constructive trust would be specifically enforceable against the constructive trustee even though he were solvent (see Comment e), but also where it would not be specifically enforceable against the constructive trustee if solvent because the remedy at law would then be adequate. The constructive trust arises apart from the insolvency of the constructive trustee, although a Court of Equity may refuse to enforce it specifically if the remedy at law is adequate; but if the constructive trustee is insolvent so that a judgment or decree for money would not be an adequate remedy, the constructive trust then becomes specifically enforceable. The beneficial interest of the beneficiary of the constructive trust is protected in equity when such protection is needed."

In the case of Girard Avenue Title and Trust Company, 317 Pa. 313, a bank accepted a note of a depositor with the understanding that the proceeds would be credited to his deposit account, but the bank mingled the note with its general assets and gave no credit to the depositor for the proceeds. The court held that the action of the bank constituted a conver-

sion of the proceeds of the note which created a trustee-ship ex maleficio of the proceeds. It was held that the depositor was entitled to a preference with regard to the proceeds of the note if the amount thereof could be traced to assets in possession of the bank and properly identified.

The troublesome part of this case, therefore, is the fact that the moneys collected from the municipalities by Olson Farms, Inc., were commingled with funds of the now insolvent Olson Farms, Inc., in the account of said corporation in the Mellon National Bank and Trust Company.

There is authority for the proposition that where a conscious wrongdoer mingles trust money with his own and thereafter withdraws and dissipates a part of the mingled funds, the beneficiary of the trust is entitled to enforce an equitable lien upon the part of the fund which remains.

A good statement on this proposition appears in vol. 4 of Scott on Trusts, p. 3295, §517, as follows:

"Where a person who is a conscious wrongdoer mingles money of the claimant with money of his own and thereafter withdraws and dissipates a part of the mingled fund, the claimant is entitled to enforce an equitable lien upon the part of the fund which remains. Where the wrongdoer is insolvent, the claimant is entitled to priority over the general creditors of the wrongdoer in collecting his claim out of the balance of the fund. If the balance is equal to or greater than the amount of his claim, he will obtain full satisfaction. If the balance is less than the amount of his claim, he is entitled to the whole of the balance, and for the remainder of his claim he can come in as a general creditor of the wrongdoer.

"Although the courts are nearly unanimous in reaching this result, they are not altogether agreed

as to the reason upon which it is based. It would seem that the reason is simple enough. The claimant has an equitable lien upon the mingled fund, and when a part of the fund is withdrawn he has an equitable lien on the part withdrawn and on the part which remains. If the part which is withdrawn is dissipated so that it can no longer be traced, the claimant still has his equitable lien on the part which remains."

This court would quite readily impress a trust upon the Olson Farms' account in the Mellon Bank, which account is now in the hands of a receiver, and allow plaintiff to recover in full, being given a preference in distribution over the common or general creditors of the Olson Farms, Inc., in receivership, but for one all important fact, namely, the knowledge of Beverly Farms, Inc., that Olson Farms, Inc., was mingling or commingling the trust funds with its own.

Evidence of this fact appears on page 61 of the record in the testimony of Howard B. Steele, vice president and general manager of Beverly Farms, Inc. He stated: "We discussed with Mr. Boyle the matters of payment for this milk under the contract that Beverly Farms was delivering and we reached an agreement informally that Olson Farms would continue to receive the checks, we would deliver the milk, Olson Farms would continue to receive the checks from the County Institution District and would reimburse Beverly Farms for the milk." On page 67 of the record, Mr. Steele stated that reimbursements by Olson Farms, Inc., were pursuant to the agreement or understanding, and throughout his testimony this official of plaintiff referred to Beverly Farms, Inc., being reimbursed by Olson Farms, Inc.

On page 97, Mr. Steele stated: "As I recalled it and so testified when the question of payment came up, Mr. Boyle was directed to go up to the County Offices and see what arrangement could be made for this account,

the payment of this account to Beverly. He reported back that the contract was in Olson Farms' name and that payment would be made by check to Olson Farms and that either that check would be endorsed over to us or deposited by Olson Farms and check in similar amount drawn to us, Beverly Farms, in payment for the milk. That was the procedure as I understand it, as we had agreed."

On page 100 of the record, said Mr. Steele testified that Beverly Farms, Inc., had received a letter from Olson Farms, Inc., and when asked when that letter was received, answered: "About April. The latter part of April 1952 in which Olson Farms advised us that no longer would they permit us to use their endorsement stamp for the application of funds that were paid to them which were later to be our property. No longer could we use their endorsement stamp but the checks would be deposited by them in their treasury and they would draw check to Beverly Farms in similar amount."

Steele testified, on page 101: "The letter and the procedure set forth that method, namely that those checks would go to Olson Farms, they would deposit them and in turn pay over to us the amounts involved."

We have concluded that this arrangement between the respective dairy companies that the money due Beverly Farms, Inc., would be deposited in the Olson Farms, Inc., account, takes Olson Farms, Inc., out of the category of being a conscious wrongdoer, for what was done in depositing said checks was in accord with the arrangement and understanding between the two companies and their officials.

Beverly Farms, Inc., therefore cannot impress a trust on the Olson Farms' account wherein its money was deposited, but is now a creditor of Olson Farms, Inc.

The leading case in this point would appear to be In re Fergusson Drug Co., Inc., 19 F. Supp. 206, which case holds:

"If funds received by an agent for the account of its principal are with its principal's consent commingled with the agent's own funds so as to change the relationship to that of debtor and creditor, the result is that the commingled fund is the agent's property, since the latter no longer is required to pay over a specific fund but merely the amount for which it has become indebted. It follows that the agent must be held to have that 'unfettered use' of the funds collected from the assigned accounts which renders the assignment void as to its trustee in bankruptcy under the rule of *Benedict v. Ratner*, supra. The fact that the assignee who has permitted the commingling of the funds essays to lay verbal restrictions upon the assignor's disposition thereof cannot change the legal relationship between the parties or serve to raise a trust or create an equitable lien in any portion of the commingled fund."

And quoting further: "These cases make it clear that the law will not permit one by a secret agreement with his agent to retain his property in funds which he has permitted to be so mingled with those of his agent as to make them subject to the demands of the latter's creditors. To hold otherwise would, we think, open wide the door for fraud against creditors of the agent." See Markovitz v. Taylor, 94 F. 2d 782; Marine Bank v. Fulton County Bank, 2 Wall. 252, 17 L. Ed. 785; General Baking Co. v. Gordon, 9 F. Supp. 210; Dimity v. Dixon, 74 Cal. App. 714, 241 P. 905; Agnew v. Agnew, 67 Colo. 81, 185 P. 259; Brighouse v. Morton (Can.), 3 Dom. L. R. 91.

The case of Fergusson Drug Co., above cited and above quoted, would appear to this court to be good

law supported by sound reason and should be followed in this case.

We have concluded as a matter of law that John L. Boyle is not liable in this matter as an officer of the Olson Farms, Inc., relying upon the case of Weimer v. Bockel, 128 Pa. Superior Ct., 385:

"As a general principle, officers of a corporation are not liable for the corporate acts and debts of a corporation and are no more to be held liable for the debts and undertakings of the corporation than any other agent for the acts and debts of his principal. They are merely agents of the corporation."

There is no evidence in this case that John L. Boyle intended to assume the obligation as a personal liability.

As stated in 19 C. J. S. Corporations, §846, p. 273: "In the absence of a constitutional, statutory, or charter provision imposing liability, a director, officer, or agent is not responsible to third persons for inattention, negligence, or other mismanagement amounting merely to nonfeasance and a breach of duty owing to the corporation alone."

§846, page 275: "Where in their management of the corporation the directors have acted in good faith and without intentional fraud, they are not liable to the creditors for the debts of the corporation on the ground that they have failed to exercise good judgment in the management of the business, or on the ground that they have disregarded statutory provisions which do not in terms impose liability on them for the corporate debts; neither are the directors chargeable personally with the debts of the corporation merely because they have mismanaged and wasted assets, but only on some such ground as deceit or fraudulent misrepresentations practiced upon persons dealing with the corporation. Where he had not personally assumed such duties by contract, an officer

or director of a corporation is not liable personally to third persons for failure to perform duties which the corporation owes them."

In the case of Kinter v. Connolly, 233 Pa. 5:

"Prior to the enactment of the national bankrupt law and insolvency act of Pennsylvania, the preference of one of its creditors by an insolvent corporation, provided there was no fraud in the contracting of the debt, or in the transfer of the company's assets in payment of it, was entirely lawful, and did not create a liability on the part of the corporation's directors to answer to it as for a breach of trust. While the legislation referred to has declared that, under certain conditions any preference given by an insolvent corporation shall enure to the benefit of all its creditors generally, it imposes no new liability upon the directors or officers concerned in the preferential disposition of the corporate assets."

These being the principal issues and questions involved, we purposely do not discuss the other conclusions of law.

Hence this decree:

## Decree

And now, March 30, 1955, it is hereby ordered, adjudged, and decreed that plaintiff, Beverly Farms, Inc., is a creditor of defendant, Olson Farms, Inc., and is not entitled to have impressed upon funds now in the hands of the receiver for Olson Farms, Inc., a trust for money due and owing the said plaintiff, that plaintiff is not entitled to equitable relief against John L. Boyle as president of Olson Farms, Inc., or in his individual capacity, that the prayer for relief, more fully set forth in the complaint and amended complaint of plaintiff, is refused. The costs of this case are placed upon plaintiff.

Eo die, exception granted to plaintiff and bill sealed.